[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 31, 2001
THOMAS K. KAHN
CLERK

----------------------------------------
No. 00-11742
----------------------------------------

D. C. Docket No. 99-01065 CV-ORL-19C


INTERNATIONAL CAFÉ, S.A.L.,
A Lebanon corporation,

Plaintiff-Appellant,

versus

HARD ROCK CAFÉ INTERNATIONAL (U.S.A.), INC.,
a Florida corporation,
HRC CANADA, Inc., an Ontario corporation,

Defendants-Appellees.

----------------------------------------------------------------
Appeal from the United States District Court
for the Middle District of Florida
----------------------------------------------------------------
**(May 31, 2001)**


Before EDMONDSON and RONEY, Circuit Judges, and DIMITROULEAS*,
District Judge.

_____

* Honorable William P. Dimitrouleas, U.S. District Judge for the Southern District of
  Florida, sitting by designation.

PER CURIAM:

This case requires us to determine whether a United States district court has subject matter jurisdiction -- based on the Lanham Act, 15 U.S.C. § 1051 et seq, and the Paris Convention for the Protection of Industrial Property, 24 U.S.T. 2140[1] -- over a claim for unfair competition by a foreign Plaintiff against a United States corporation for acts occurring mainly outside the United States. The district court dismissed for lack of subject-matter jurisdiction. We also conclude that no subject-matter jurisdiction exists, and we therefore affirm.

Plaintiff International Café, S.A.L. is a Lebanese corporation that operates a restaurant called Hard Rock Café in Beirut, Lebanon.

Defendants are Hard Rock Café International (U.S.A.), Inc. ("HRC"), a Florida corporation that licenses Hard Rock Café restaurants worldwide and claims control of the Hard Rock Café brand; HRC Canada, Inc. ("HRCC"), a Canadian corporation that Plaintiff alleges is a wholly owned subsidiary controlled by HRC; and Rank Canada, Inc., a Canadian corporation that guaranteed HRCC's obligations under a purchase agreement. Also pertinent to this appeal is Hard Rock Café Limited ("HRC Limited"), which issued Hard Rock Café franchises to individuals in countries other than the United States. HRCC purchased HRC

---

[1]The United States and Lebanon are signatories to the Paris Convention.

Limited in 1996.

According to the complaint, in August, 1991, Nouhad Khalil obtained the exclusive rights to use the Hard Rock Café name and logo in Lebanon with the express authorization of HRC Limited. In Lebanon, Khalil registered the Hard Rock Café name and logo, obtained a Certificate of Registration of a Commercial Store and a Permit for Deposit of a Trademark, and received notification from the Head of the Protection Ownership Administration. He also procured a 25-year lease, built a restaurant and parking facility, and purchased original rock 'n roll memorabilia from around the world. In June 1996, Plaintiff[2] and HRC Limited formalized their agreement in writing, and Plaintiff's Hard Rock Café restaurant opened in November 1996.

Approximately one month later, HRC authorized another Hard Rock Café franchise in Beirut, less than one mile from Plaintiff's Hard Rock Café restaurant.[3] During this same time, HRCC purchased HRC Limited. The purchase price for HRC Limited included the licensing rights that HRC Limited possessed for the Hard Rock Café name and marks worldwide.

---

[2]In April, 1996, Khalil transferred his exclusive rights to Hard Rock Café to Plaintiff International Café, S.A.L.

[3]The franchise agreement was actually with Hard Rock Limited, which Plaintiff alleges is a wholly-owned subsidiary of HRC.

3

Plaintiff alleges that, since HRCC's purchase of HRC Limited and the opening of the second Hard Rock Café restaurant in Beirut, HRC has attempted to close down Plaintiff's Hard Rock Café restaurant. HRC specifically refused to distribute Hard Rock Café merchandise to Plaintiff, and HRC filed criminal and civil charges against Khalil in Lebanon.[4] Plaintiff claims that HRC receives benefits from its Lebanon restaurant in the United States in the form of franchise fees, royalties, and commissions from the sale of merchandise.

Plaintiff then filed suit in the Middle District of Florida alleging unfair competition under the Lanham Act, 15 U.S.C. §1126, and breach of contract under state law. Plaintiff claimed that he has the exclusive rights to use the Hard Rock Café name and logos in Lebanon because he first registered and used the name and logo there. Plaintiff also sought permanent injunctive relief and declaratory relief. The district court granted Defendants' motion to dismiss based on lack of subject-matter jurisdiction. Plaintiff appeals.

The district court concluded that, although the Lanham Act implements the Paris Convention, see 15 U.S.C. §§ 1126(b), (h) & (i), the Lanham Act and Paris Convention create no additional substantive rights for parties and confers no

_____

[4]The criminal charges were dismissed, and the Lebanese Penal Court of Appeal affirmed. The civil charges remained pending at the time the district court dismissed the case.

additional jurisdiction on the courts. The court also concluded that no jurisdiction existed based on any other provision of the Lanham Act because Plaintiff had no trademark rights in the United States. The district court alternatively concluded that the complaint failed to state a claim. See Fed. R. Civ. P. 12(b)(6).

We review a district court's determination that it is without jurisdiction de novo. Barnett v. Bailey, 956 F.2d 1036, 1039 (11th Cir. 1992). A facial attack on the complaint requires the court to look and see if the plaintiff has sufficiently alleged a basis of subject-matter jurisdiction. "[A] federal court may dismiss a federal question claim for lack of subject matter jurisdiction only if: (1) the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction; or (2) such a claim is wholly insubstantial and frivolous." Blue Cross & Blue Shield of Alabama v. Sanders, 138 F.3d 1347, 1352 (11th Cir. 1998) (quoting Bell v. Hood, 66 S.Ct. 773, 776 (1946)). We consider allegations in the complaint as true for the purposes of the motion.

Plaintiff argues that Section 44 of the Lanham Act incorporates the provisions governing unfair competition in the Paris Convention. The Paris Convention ensures that "foreign nationals should be given the same treatment in each of the member countries as that country makes available to its own citizens"

as to trademark and related rights.  Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 640 (2nd Cir. 1956).  The Convention also sought to create uniformity by obligating each member nation "to assure to nationals of countries of the Union an effective protection against unfair competition."  53 Stat. 1780, art. 10(1).

Subject-matter jurisdiction may arise under an international treaty like the Paris Convention if domestic law incorporates the treaty.[5]  See United States v. Postal, 589 F.2d 862, 878 (5th Cir. 1979).  Section 44 of the Lanham Act provides that "[a]ny person whose country of origin is a party to the convention . . . shall be entitled to benefits [under § 1126] to the extent necessary to give effect to any provision of such convention. . ."  15 U.S.C. § 1126(b).  Also, any person covered by §1126(b) "shall be entitled to effective protection against unfair competition, and the remedies . . . shall be available so far as they may be appropriate in repressing acts of unfair competition."  15 U.S.C. § 1126(h).

We agree that section 44 of the Lanham Act incorporated, to some degree,

---

[5]A treaty can also be self-executing if it "directly accords enforceable rights to persons without the benefit of Congressional implementation."  Haitian Refugee Ctr., Inc. v. Baker, 949 F.2d 1109, 1110 (11th Cir. 1991).  The Paris Convention is not self-executing because, on its face, the Convention provides that it will become effective only through domestic legislation.  See 53 Stat. 1780, art. 17 ("It is understood that at the time an instrument of ratification or accession is deposited on behalf of a country, such country will be in a position under its domestic law to give effect to the provisions of this Convention."); see also Mannington Mills, Inc. v. Congoleum Corp., 595 F.2d 1287, 1298 (3rd Cir. 1979); Ortman v. Standray Corp., 371 F.2d 154, 157 (7th Cir. 1967).  But see Vanity Fair, 234 F.2d at 640 (noting, without discussion, that plaintiff "would appear to be correct" in asserting that Paris Convention is self-executing).

the Paris Convention. But we disagree that the Paris Convention creates substantive rights beyond those independently provided in the Lanham Act. As other courts of appeals have noted, the rights articulated in the Paris Convention do not exceed the rights conferred by the Lanham Act. See Scotch Whisky Assoc. v. Majestic Distilling Co., Inc., 958 F.2d 594, 597 (4th Cir. 1992); Vanity Fair, 234 F.2d at 644; see also L'Aiglon Apparel v. Lana Lobell, Inc., 214 F.2d 649, 652-54 (3rd Cir. 1954). Instead, we conclude that the Paris Convention, as incorporated by the Lanham Act, only requires "national treatment."

National treatment means that "foreign nationals should be given the same treatment in each of the member countries as that country makes available to its own citizens." Vanity Fair, 234 F.2d at 640. So, section 44 of the Lanham Act gives foreign nationals the same rights and protections provided to United States citizens by the Lanham Act. As such, foreign nationals like Plaintiff may seek protection in United States courts for violations of the Lanham Act. But the Paris Convention, as incorporated by section 44 of the Lanham Act, creates no new cause of action for unfair competition. Any cause of action based on unfair competition must be grounded in the substantive provisions of the Lanham Act.

We will now consider whether jurisdiction exists under the substantive provisions of the Lanham Act for unfair competition.

7

In <u>Steele v. Bulova Watch Co.</u>, 73 S. Ct. 252 (1952), the Supreme Court considered the extraterritorial application of a Lanham Act claim. The court concluded that a United States company could sue a United States citizen for trademark infringement occurring in Mexico under the Lanham Act. The Court recognized that Congress may "project the impact of its laws beyond the territorial boundaries of the United States," <u>id</u>. at 254, but that such legislation "will not extend beyond the boundaries of the United States unless a contrary legislative intent appears." <u>Id</u>. at 255. The Court concluded that the Lanham Act conferred jurisdiction over extraterritorial disputes involving trademark infringement and unfair competition when: 1) Defendant is a United States corporation; 2) the foreign activity had substantial effects in the United States; and 3) exercising jurisdiction would not interfere with the sovereignty of another nation.

The first element from <u>Bulova</u> is obviously present here: HRC is a United States corporation. Congress has authority to regulate the conduct of United States corporations conducting business abroad.

But Plaintiff's complaint fails to allege sufficiently facts to support the two other elements of the <u>Bulova</u> test. <u>See</u> <u>Vanity Fair</u>, 234 F.2d at 643 ("[T]he absence of one of the [<u>Bulova</u>] factors might well be determinative and [] the absence of both is certainly fatal."). The <u>Bulova</u> court explained that "[u]nlawful

effects in this country . . . are often decisive." Id. at 288 (noting as unlawful effects that "spurious [watches] filtered through the Mexican border into this country" and that the defendant's "competing goods could well reflect adversely on [the plaintiff's] trade reputation in markets cultivated by advertising here as well as abroad" ). The only substantial effect in the United States alleged by Plaintiff is financial gain by Defendant, like royalties and merchandise commission. But the financial gain from royalties that HRC, the United States parent company, received from the subsidiary abroad is insufficient in this case to establish the "substantial effects" required by Bulova. Cf. Vanity Fair, 234 F.2d at 638, 642 (concluding substantial effect on domestic commerce where defendant advertised product in United States and sold product by mail to customers in United States).

Also, civil suits against Plaintiff about the validity of certain Hard Rock Café trademarks remain pending in Lebanon. Thus, a ruling by a United States court on allegations of unfair competition based on the use of Hard Rock Café trademarks might interfere with an inconsistent ruling from the Lebanon courts. Cf. Bulova, 73 S. Ct. at 257 (Mexican courts had already cancelled the U.S. defendant's trademark registration; so, "there can be no interference with the sovereignty of another nation").

We finally note that the Paris Convention, as incorporated by the Lanham

Act, is premised on the idea that each nation's law should only have territorial application. "Thus, a foreign national of a member nation using his trade-mark in commerce in the United States is accorded extensive protection here against infringement." <u>Vanity Fair Mills</u>, 234 F.2d at 640-41. The source of that protection rests in domestic law, not the foreign state's law. But here, Plaintiff is not competing in nor using his trademark in the United States. All Plaintiff alleges is that a United States company is infringing on its rights in a foreign country. HRC's use of its Hard Rock trademark in Lebanon is subject to Lebanese law.

Thus, the district court correctly dismissed Plaintiff's complaint for lack of subject-matter jurisdiction.

AFFIRMED.