ALMACENES EXITO S.A., Plaintiff,

v.

EL GALLO MEAT MARKET, INC., Gallo Market, Inc., Randall Meat Market, Inc., 2300 Xtra Wholesalers, Inc., 3815–9th Avenue, Inc., El Nene Meat & Food Corp., Associated Food Stores, Inc., Jose Rene Caraballo, Rafael Montes de Oca, Luis Nunez, Rafael Then, Nelson Collado, Oscar Nunez, and John Does 1–50, Defendants.

No. 05 Civ. 3434(JSR).

United States District Court, S.D. New York.

Aug. 7, 2005.

Bruce Roy Millar Ewing, Lile H. Deinard, Dorsey & Whitney LLP, New York City, for Plaintiff.

Stephen Edward Feldman, Stephen E. Feldman, P.C., Harvey L. Goldstein, Finkel Goldstein Rosenbloom & Nash LLP, New York City, for Defendants.

## MEMORANDUM ORDER

RAKOFF, District Judge.

In *Empresa Cubana Del Tabaco v. Culbro Corp.*, 399 F.3d 462 (2d Cir.2005) the Second Circuit left open "the question of whether an entity that has not used a mark on products sold in the United States can nonetheless acquire a U.S. trademark through operation of the famous marks doctrine." *Id.* at 465. In the instant case, the Court is obliged to answer the question, and concludes that the answer is "No."

Plaintiff Almacenes Exito, S.A. ("Exito") claims to be the "Wal–Mart of Columbia," *see* Complaint ("Compl.") ¶ 24, but does not operate in the United States. It alleges that defendants, operators of several small grocery stores in upper Manhattan and the Bronx, *see* Compl. ¶ 29, infringed plaintiff's "EXITO" trademark and engaged in unfair competition by, in effect, pretending to be affiliated with Exito. Specifically, Counts 1–3 of the Complaint (the federal causes of action) allege false designation of origin and false descriptions under § 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a), trademark infringement under Article 6*bis* (1) of the Paris Convention as implemented by § 44(b) of the Lanham Act, 15 U.S.C. § 1126(b), and violation of plaintiff's trade name rights under Article 8 of the Paris Convention as implemented by § 44(g) of the Lanham Act, 15 U.S.C. § 1126(g). Similarly, Counts 4–6 of the Complaint (the state causes of action) allege trademark dilution under New York General Business Law § 360–l and trademark infringement and unfair competition under New York common law. After defendants moved, under Rule 12(b)(6), Fed. R.Civ.P., to dismiss all six counts, the Court, by Order dated July 14, 2005,

granted the motion with respect to Counts 1–3 and denied the motion with respect to Counts 4–6. This Memorandum Order states the reasons for those determinations.[1]

The facts as alleged in the Complaint are taken as true for the purposes of this motion. *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 123 (2d Cir. 1991). Exito is a corporation organized and existing under the laws of the Republic of Columbia. *See* Compl. ¶ 2. It owns the largest retail superstore chain in the Republic of Columbia, with sales exceeding $700,000,000 (U.S.) in 1999. *See* Compl. ¶ 23.

Plaintiff has used the trade name "EXITO"—the Spanish word for "success"—throughout Columbia and Venezuela since 1949. *See* Compl. ¶ 21. The distinctive EXITO mark appears in uppercase, block, black lettering, with each letter set inside individual yellow rectangular blocks that are outlined in black piping and spaced slightly apart from one another. *See* Compl. Exs. 1 and 2. The EXITO mark has come to be known and recognized as a designation of source throughout Latin America and by a high percentage of the Hispanic population in New York City. *See* Compl. ¶ 26.

Defendants own and operate a variety of local supermarkets in predominantly Hispanic neighborhoods in upper Manhattan and the Bronx, marketing groceries and fresh foods with a particular emphasis on Latin American produce. *See* Compl. ¶¶ 28–29. Each store features an exact replica of plaintiff's EXITO mark. *See*

Compl. ¶ 30. Defendants adopted the EXITO mark with intent to cause consumer confusion and to capitalize on plaintiff's good will. *See* Compl. ¶¶ 31–32.

The Complaint, however, does not allege that Exito ever registered or used its mark either in New York or anywhere else in the United States.[2] The question, then, is whether the absence of such registration or use is fatal to any or all of plaintiff's claims.

It has long been a bedrock principle of federal trademark law that registration or prior use of a mark in the United States is a precondition to maintaining a cause of action for infringement of the mark and the like. *See, e.g., Trade–Mark Cases,* 100 U.S. 82, 25 L.Ed. 550 (1879); *United Drug Co. v. Theodore Rectanus,* 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918); *Hanover Star Milling v. Metcalf,* 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916); *Buti v. Impressa Perosa, S.R.L.,* 139 F.3d 98 (2d Cir.1998); *Person's Co. v. Christman,* 900 F.2d 1565, 1568 (Fed.Cir.1990). Sometimes referred to as the "territoriality principle," this principle provides that "priority of trademark rights in the United States depends solely upon priority of use in the United States, not on priority of use anywhere in the world." J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 29.2 at 29–6 (4th Ed.2002).

Exito, however, argues that its claims, both state and federal, fall within an exception to this requirement called the "well-known or famous marks" doctrine. "Under the doctrine, foreign marks are

---

**1.** Plaintiff has since filed an Amended Complaint that, *inter alia,* conforms with the Court's ruling of July 14, 2005.

**2.** Although plaintiff has now filed an application for U.S. trademark registration, *see* Compl. ¶ 27, it does not rely on this applica-

tion in any respect in contesting defendants' motion to dismiss. Nor does plaintiff contest that it has never used its mark in the United States. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint ("Pl.Memo.") at 24–25.

protectable even without use or registration within the United States, where the mark is so 'well known' or 'famous' as to give rise to a risk of consumer confusion if the mark is used subsequently by someone else in the domestic marketplace." *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate Inc.*, 2005 WL 1164073, at *7, 2005 U.S. Dist. LEXIS 9307 at *20 (S.D.N.Y. May 18, 2005).

■ To the extent the doctrine is a creature of common law it may support state causes of action, *see infra*, but it has no place in federal law where Congress has enacted a statute, the Lanham Act, that carefully prescribes the bases for federal trademark claims. The Lanham Act nowhere specifies the well-known or famous marks doctrine.[3]

■ Plaintiff, however, argues that it is there by implication because Article 6*bis* of the Paris Convention of 1883, an international treaty to which both the United States and Columbia are parties, specifies that the signatory nations

> undertake, ex officio if their legislation so permits, or at the request of an interested party, to refuse or to cancel the registration, and to prohibit the use, of a trademark which constitutes a reproduction, an imitation, or a translation, liable to create confusion, of a mark considered by the competent authority of the country of registration or use to be well known in that country as being already the mark of a person entitled to the benefits of this Convention and used for identical or similar goods. These provisions shall also apply when the essential part of the mark constitutes a reproduction of any such well-known mark or an imitation liable to create confusion therewith.

Paris Convention, Art. 6*bis* (1). Similarly, Article 8 of the Paris Convention, on which plaintiff also relies, provides:

> A trade name shall be protected in all the countries of the Union without the obligation of filing or registration, whether or not it forms part of a trademark.

Paris Convention, Art. 8.

In turn, Section 44(b) of the Lanham Act provides that

> [a]ny person whose country of origin is a party to any convention or treaty relating to trademarks . . . to which the United States is also a party . . . shall be entitled to the benefits of this section under the conditions expressed herein to the extent necessary to give effect to any provision of such convention, treaty or reciprocal law, *in addition to* the rights to which any owner of a mark is otherwise entitled by this Act.

15 U.S.C. § 1126(b) (emphasis added).[4] So, plaintiff's argument goes, the Lanham

---

**3.** Although it might be argued that the Lanham Act itself, while referring to use in commerce, *see, e.g.*, 15 U.S.C. § 1125(a)(1), does not specify the "territorial principle" *in haec verba*, the principle was long established before enactment of the Lanham Act in 1946 and was already so basic to trademark law that it may be presumed to be implied in the Lanham Act. No such presumption, by contrast, operates in the case of the "well-known or famous marks" doctrine, which has never been adopted by the Supreme Court and has only been adopted by one circuit court, the Ninth Circuit, and there only in one very

recent case, *see Grupo Gigante Sa De CV v. Dallo & Co.*, 391 F.3d 1088 (9th Cir.2004).

**4.** Plaintiff makes no argument that, independent of the Lanham Act, the provisions of the Paris Convention on which it relies are self-executing and provide a basis for bringing suit in the United States. Even the Ninth Circuit, which recognized a limited cause of action for the famous marks doctrine under the Lanham Act, *see infra*, expressly rejected such an argument, holding that "the Paris Convention creates neither a federal cause of

Act provides a foreign plaintiff with additional substantive rights created by the Paris Convention.

So far as the Second Circuit is concerned, however, any argument along these lines has effectively been rejected by that Court's recent decision in *Empresa Cubana, supra.* For there, although not reaching the precise question here presented, the Second Circuit, in rejecting a similar argument relating to unfair competition, expressly adopted the view of the Eleventh Circuit in *Int'l Cafe, S.A.L. v. Hard Rock Cafe Int'l Inc.*, 252 F.3d 1274, 1277–78 (11th Cir.2001) as follows:

> We agree that Section 44 of the Lanham Act incorporated to some degree the Paris Convention. But we disagree that the Paris Convention creates substantive rights beyond those independently provided in the Lanham Act. As other courts of appeals have noted, the rights articulated in the Paris Convention do not exceed the rights conferred by the Lanham Act. Instead, we conclude that the Paris Convention, as incorporated by the Lanham Act, only requires "national treatment."

*Int'l Cafe*, 252 F.3d at 1277–78, quoted in *Empresa Cubana*, 399 F.3d at 484–85. *See also Empresa Cubana*, 399 F.3d at 484 ("The Paris Convention requires that 'foreign nationals be given the same treatment in each of the member countries as that country makes available to its own citizens,'" *quoting Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 640 (2d Cir.1956), *cert. denied*, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956)). Since it is conceded that a United States citizen who claimed to own the EXITO mark could not bring a Lanham Act claim for infringement or the like against the defendants here if he had neither registered the mark in the United States nor made prior use of it in the

action nor additional substantive rights."

United States, it follows from the above-quoted language that the Second Circuit has effectively concluded that a foreign owner of an EXITO mark could not bring such an action either.

It is true that the Ninth Circuit in *Grupo Gigante,* as well as at least two district courts in this district, *see De Beers,* 2005 WL 1164073, at *7, 2005 U.S. Dist. LEXIS 9307 at *19–20; *Empresa Cubana del Tabaca v. Culbro Corp.*, 2004 WL 602295, at *29–39, 2004 U.S. Dist. LEXIS 4935 at *87–116 (S.D.N.Y. March 29, 2004) *rev'd on other grounds,* 399 F.3d at 465 (2d Cir.2005), have recognized, on "policy" grounds, a limited exception to the territoriality principle for a famous marks doctrine (albeit an exception that they each define differently). It is also true, as noted, that the Second Circuit in *Empresa Cubana* expressly left open this possibility as well. However, such a radical change in basic federal trademark law may, in this Court's view, only be made by Congress, not the courts. Accordingly, since it is conceded that plaintiff has not satisfied the territorial principle, plaintiff's three Lanham Act claims—Counts 1, 2 and 3 of the Complaint—must be dismissed.

■ The same, however, is not true of plaintiff's state law claims, for the territoriality principle is part of federal law, not New York state law, and New York has fully adopted the well-known or famous marks doctrine as part of its common law. Indeed, it was a New York case that first introduced the doctrine to modern law. *Maison Prunier .v. Prunier's Restaurant & Cafe, Inc.*, 159 Misc. 551, 288 N.Y.S. 529 (1936) (interpreting the Paris Convention as applied to New York common law).

The *Maison Prunier* court's reliance on the Paris Convention is not foreclosed by

*Grupo Gigante,* 391 F.3d at 1100.

the Eleventh Circuit's ruling adopted by the Second Circuit in *Empresa Cubana*. For, as quoted above, the ruling was that the Paris Convention did not provide substantive rights "beyond those independently provided in the Lanham Act." *Empresa Cubana*, 399 F.3d at 485. Neither the Eleventh Circuit in *Int'l Cafe* nor the Second Circuit in *Empresa Cubana* said anything as to the Paris Convention's interplay with state common law. Moreover, the Lanham Act has never been read to be preemptive of state trademark and unfair competition law.

█ Defendants' remaining objections to plaintiff's state law claims may be dealt with briefly. Given the very modest requirements of notice pleading, *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir.2005), the allegations of the Complaint are sufficient to state a dilution claim under § 360–l of the New York General Business Law (Count 4), *see* Compl. ¶¶ 31, 32 and 34, and an infringement claim under New York common law (Count 5), *see* Compl. ¶¶ 31, 32.

█ As for Count 6, which accuses defendants of "palming off" their goods as those of plaintiff, it is settled New York law that the marks need not be in competition with one another for a plaintiff to succeed on such a claim. *Maison Prunier*, 288 N.Y.S. at 534. Accordingly, plaintiff has alleged enough for this claim to survive as well. *See* Compl. ¶¶ 31, 32.

Accordingly, the July 14, 2005 Order granting the motion to dismiss with respect to Counts 1–3 and denying the motion with respect to Counts 4–6 is hereby reaffirmed in all respects.

SO ORDERED.