[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14883
_____

D. C. Docket No. 6:14-cv-01335-RBD-GJK

COMMODORES ENTERTAINMENT CORPORATION,

Plaintiff-Appellee,

versus

THOMAS MCCLARY,
FIFTH AVENUE ENTERTAINMENT, LLC,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 15, 2016)

Before HULL and JILL PRYOR, Circuit Judges, and ROYAL,[*] District Judge.

_____

[*]Honorable C. Ashley Royal, United States District Judge for the Middle District of Georgia, sitting by designation.

PER CURIAM:

This is an appeal from the district court's entry of a preliminary injunction in favor of Appellee Commodores Entertainment Corp., enjoining Appellants Thomas McClary and Fifth Avenue Entertainment, LLC, (collectively "Appellants") from using the "The Commodores" mark and performing under the name "The Commodores featuring Thomas McClary" or "The 2014 Commodores." For the reasons explained below, we **AFFIRM**.

## FACTUAL BACKGROUND

In the late 1960's, six Tuskegee Institute students founded the musical group "The Commodores," including Lionel Ritchie, William King, Walter Orange, and Thomas McClary. The Commodores gained fame in the 1970's with their distinctive funk/soul musical style and signed a recording deal with the legendary Motown Records. In 1978, The Commodores entered into a General Partnership Agreement and formed a corporation named Commodores Entertainment Corp. ("CEC"). Throughout the 1970's and early 1980's, The Commodores recorded more than 10 albums and their fame became "mighty-mighty"[1] with hits such as *Brick House*, *Three Times a Lady*, *Easy*, and *Lady (You Bring Me Up)*. And

---

[1] The Commodores, *Brick House*, on COMMODORES (Motown Records 1977).

2

although it seemed everything was "easy like Sunday morning,"[2] "this is how the story goes."[3]

In the early 1980's, two of the original members of The Commodores left the group to embark on solo careers: Lionel Richie in 1982 and Thomas McClary in 1984. McClary signed with Motown and began his solo career recording his first solo album in 1985, *Thomas McClary*. McClary then returned to his home state of Florida, became the musical director of his church, and started his own recording label. In 2010, he performed twice as a replacement guitarist for The Commodores and continues to receive royalties from the group.

After Richie and McClary left, The Commodores brought on new members, including J.D. Nicholas. The Commodores continued to perform and went on to win a Grammy for their song *Nightshift*. From 1988 to the present, Walter Orange, William King, and J.D. Nicholas have performed together nationally and internationally as The Commodores. In 2001, CEC registered four trademarks ("the marks") to use the terms "Commodore" and "Commodores" with the United States Patent and Trademark Office ("USPTO") and renewed its registration in 2010. In 2014, McClary began to perform the songs made famous by The Commodores in the 1970's with his own band, "The Commodores featuring

---

[2] The Commodores, *Easy*, on COMMODORES (Motown Records 1977).
[3] *Brick House*, *supra* note 1.

Thomas McClary," which he also referred to as "The 2014 Commodores." Subsequently, McClary began to make arrangements to perform internationally with his band.

McClary's use of "The Commodores" in connection with his band gave rise to the present litigation. CEC sought a preliminary injunction to enjoin Appellants from performing under the name "The Commodores featuring Thomas McClary" and "The 2014 Commodores." The district court granted CEC's motion for a preliminary injunction and enjoined Appellants from using the marks.

The district court found that Thomas McClary left the group and had no common law rights to the marks because those rights belonged to the members of The Commodores who "stayed with the group" and "continued to control the nature and quality of the [m]arks." D. Ct. Order, Doc. 56 at 6. In its injunction, the district court found CEC established a substantial likelihood of success on the merits, a likelihood of irreparable harm, a balance of hardships in its favor, and that a preliminary injunction would serve the public interest. The district court subsequently clarified its injunction order and explained Appellants were enjoined from performing under the marks both domestically and internationally. Appellants now appeal from the district court's grant of a preliminary injunction.

## ANALYSIS

Appellants argue the district court erred on several grounds in granting the preliminary injunction. First, CEC could not establish success on the merits because CEC has no standing to bring this action, and no likelihood of confusion exists between "The Commodores" mark and "The Commodores featuring Thomas McClary" or "The 2014 Commodores."[4] Second, even if CEC could show likelihood of success on the merits, the district court erred by applying a presumption of irreparable harm. And third, the district court lacked jurisdiction to enjoin Appellants from using the marks internationally or extraterritorially.

We review a district court's grant of a preliminary injunction for abuse of discretion and give "no deference to the district court's legal determinations." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 984 (11th Cir. 1995) (citing *Church v. City of Huntsville*, 30 F.3d 1332, 1341-42 (11th Cir. 1994)). "[T]he district court's factual determinations cannot be disturbed unless clearly erroneous[.]" *Lebron v. Sec'y, Fla. Dep't of Children & Families*, 710 F.3d 1202, 1206 (11th Cir. 2013).

---

[4] While the district court enjoined the use of "The 2014 Commodores," Appellants in their brief on appeal do not argue about that name and only mention it when quoting the district court's order. Thus, it seems Appellants have not challenged this part of the preliminary injunction. However, in an abundance of caution, we include the name "The 2014 Commodores" in our discussion.

A district court may grant a preliminary injunction only if the movant establishes the following: "(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest." *N. Am. Med. Corp. v. Axiom Worldwide, Inc.,* 522 F.3d 1211, 1217 (11th Cir. 2008) (quoting *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002)). For the following reasons, we conclude that the district court did not abuse its discretion in issuing a preliminary injunction.

## I.    Likelihood of Success on the Merits.

As a preliminary matter, we note that having a registered mark with the USPTO is not a prerequisite to prevail on a claim of trademark infringement under the Lanham Act. *See Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1320 (11th Cir. 2011) (noting that use of another's common law trademark "can constitute a violation of [section 43(a) of the Lanham Act]") (quoting *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512 (11th Cir. 1984)).  Rather, to succeed on the merits, the plaintiff must prove: (1) that it had enforceable trademark rights in the mark or name, and (2) that the defendants made unauthorized use of the marks "such that consumers were likely to confuse the two." *Custom Mfg. & Eng'g, Inc.*

6

*v. Midway Servs., Inc.*, 508 F.3d 641, 647-48 (11th Cir. 2007) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997)).

The district court in its order did not rely on CEC's USPTO registration of the marks for its analysis. Instead, the district court found that CEC had a likelihood of success on the merits because the right to use the marks was held by the members of The Commodores that remained with the group and thus "maintained quality or control over the [m]arks." D. Ct. Order, Doc. 56 at 6. The district court also found that Appellants' use of the marks, "The Commodores featuring Thomas McClary" and "The 2014 Commodores," was likely to confuse. For the following reasons, the district court did not err in its finding that CEC had a substantial likelihood of success on the merits.

### A. Right to Use the Mark

For Appellants, the "gravamen" of their appeal rests on what they contend was the district court's erroneous ruling as to the first element of CEC's infringement claim—CEC's rights to the marks. *See* Appellants' Br. at 15. Appellants contend CEC does not have enforceable rights to the marks, and thus does not have standing to assert claims of infringement. They assert two reasons as to why CEC lacks standing.

7

Appellants argue the district court erred in finding the remaining original members of The Commodores, King and Orange, held the common law rights to the marks. They further argue that even if King and Orange held the common law rights to the marks, the record contained no evidence they transferred or assigned those rights to CEC. As an initial matter, we find no error in the district court's finding that the members who remained with the group and controlled the quality and reputation of the marks had the common law rights to the marks, not Appellants. *See Crystal*, 643 F.3d at 1320 (holding that a company that originally formed a band did not own rights to the band's mark because, *inter alia*, the company failed to exercise control over the band); *see also Robi v. Reed*, 173 F.3d 736, 740 (9th Cir. 1999) (noting that an original founding member of the group who "remained and performed with it from its inception" retained the right to use the mark to the exclusion of a band member who left). Moreover, despite Appellants' contention that the record contained no evidence of transfer, we find sufficient evidence exists showing King and Orange transferred their rights to CEC to establish CEC's standing to bring suit.

The evidence showed King and Orange displayed conduct consistent with transfer or assignment of the rights to the marks to CEC. For example, not only were King and Orange the sole corporate officers of CEC when it registered the marks in 2001, and when it renewed the marks in 2010, they remain the sole

8

officers of CEC today. CEC's Art. of Inc., Doc. 33-14. Moreover, no evidence suggests that King and Orange oppose CEC's use of the marks. On the contrary, King has affirmed CEC's rights to the marks by submitting an unsworn declaration in support of CEC's motion for preliminary injunction. Doc. 38-1.[5] At this early stage of litigation, we conclude that CEC has sufficiently shown standing to seek a preliminary injunction. However, the district court should clarify and address comprehensively any issues surrounding the parties' standing as this litigation progresses.

Second, Appellants argue that even if CEC had acquired the common-law rights through transfer, CEC's trademark registration with the USPTO is invalid because CEC's name on the USPTO registration of the marks is misspelled. On the registration, CEC is named as "Commodore Entertainment Corp.", when in fact the corporation is registered as "Commodores Entertainment Corp." with the Nevada Secretary of State. Appellants contend the district court misinterpreted Nevada law when it failed to distinguish CEC, "Commodores Entertainment Corp.", with an "s", from the USPTO registered owner of the marks "Commodore Entertainment Corp.", without an "s". Appellants cite Nevada corporate law to buttress their argument that an omission of an "s" affects substantive rights associated with

---

[5] This unsworn declaration complies with 28 U.S.C. § 1746.

CEC's registration of its marks, mainly NEV. ADMIN. CODE § 78.050 (2000).[6] Appellants' argument, however, is unconvincing.

State corporate law does not control this issue; federal trademark law does. *See* 15 U.S.C. § 1121 (granting federal courts original and appellate jurisdiction over claims arising under the Lanham Act); *see also Crystal*, 643 F.3d at 1323 (noting that "the legal standards we apply to [a state law claim] are the same as those we have applied under section 43(a) of the Lanham Act"). Moreover, although the Court need not address this issue here, it seems nonsensical that a typographical error on a trademark registration application would invalidate a federal registration of a trademark, especially where the district court has found that the party holding the registration of the mark has the substantive common law right. *See, e.g., Argo & Co. v. Springer, et al.*, 198 U.S.P.Q. 626 (P.T.O. Feb. 22, 1978) (noting a mark is not void where there is no mistake as to the true owner of

---

[6] The language of Nevada Administrative Code 78.050 reads:

> A difference in spelling, regardless of whether there is a phonetic similarity between the proposed name of the corporation and the name of an existing business entity, may make the proposed name distinguishable from the name of an existing business entity. For example:
>
> 1. "Capital Cleaner" is distinguishable from "Capitol Cleaners";
> 2. "Cool Cuts" is distinguishable from "Kool Kuts";
> 3. "Great Picks" is distinguishable from "Great Pix";
> 4. "Jones Tires" is distinguishable from "Joan's Tires"; and
> 5. "Write, Inc." is distinguishable from "Right, Inc."

the mark, but only a mistake as to the legal form of the entity asserting rights to the mark). Thus, CEC has standing to bring this suit.

## B. Likelihood of Confusion

As to the second element of CEC's infringement claim, the district court did not err in finding a likelihood of confusion between the marks and "The Commodores featuring Thomas McClary" and "The 2014 Commodores." We have previously noted that the "touchstone of liability in a trademark infringement action is not simply whether there is unauthorized use of a protected mark, but whether such use is likely to cause consumer confusion." *Crystal*, 643 F.3d at 1323 (quoting *Custom*, 506 F.3d at 647).

When determining whether a likelihood of confusion exists, we consider seven factors: (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion. *Alliance Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000); *see also Axiom Worldwide, Inc.*, 522 F.3d at 1220. As this Court has previously noted, "the last factor, actual confusion in the consuming public, is the most

11

persuasive evidence in assessing likelihood of confusion." *Tana v. Dantanna's*, 611 F.3d 767, 779 (11th Cir. 2010). "The findings as to each factor, and as to the ultimate conclusion regarding whether or not a likelihood of confusion existed, are subject to the clearly erroneous standard of review." *Frehling Enters., Inc. v. Int'l Select Grp., Inc.,* 192 F.3d 1330, 1335 (11th Cir. 1999). A finding of fact is only clearly erroneous if, after reviewing the entire evidence, we are "left with the definite and firm conviction that a mistake has been committed." *Johnson & Johnson*, 299 F.3d at 1246 (quoting *Univ. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1543 (11th Cir. 1985)).

The district court relied on sufficient evidence to find likelihood of confusion, including actual confusion. Evidence in the record shows that Appellants' band subsumed The Commodores' mark within its title with no limiting language; the bands performed similar music using the same name or similar name in their advertising and similar advertising mediums; and both bands appeal to the same fan base and venues. Moreover, the record contains evidence of actual confusion by consumers as well as presidents of entertainment companies, including affidavits of the three presidents, who create, produce, and market concerts and other musical events. *See* Docs 1-4, 7-1, 8-1, 9-1. Thus, the district court's finding that this evidence showed a likelihood of confusion was not clearly

erroneous. Therefore, we find no error as to the district court's determination that CEC established a substantial likelihood of success on the merits.

## II.    Irreparable Harm

Appellants next argue the district court erred by applying a presumption of irreparable harm in contradiction of the United States Supreme Court's holding in *eBay Inc. v. MercExchange, LLC*., 547 U.S. 388, 126 S. Ct. 1837 (2006).

In *eBay*, the Supreme Court held "that the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *Id*. at 394, 126 S. Ct. at 1841. This Court recognized in *North American Medical Corp. v. Axiom Worldwide, Inc.*, that *eBay*'*s* holding "extends to the grant of preliminary injunctions under the Lanham Act." 522 F.3d at 1228. In light of the Supreme Court's holding in *eBay*, a presumption of irreparable harm cannot survive. However, the Supreme Court in *eBay* did not hold that the same evidence proffered to support a likelihood of success on the merits cannot be proffered to determine a likelihood of irreparable harm. Rather, it held that the district court should grant injunctions consistent with "traditional principles of equity." *eBay*, 547 U.S. at 394, 126 S. Ct. at 1841.

In the present case, the district court went beyond merely presuming irreparable harm; it also made a factual finding. The district court relied on CEC's previously proffered evidence as to a likelihood of confusion to support a finding that there was a likelihood of irreparable harm. Specifically, the district court found that CEC "demonstrated a sufficient likelihood of consumer confusion, evidenced by the general public mistaking [Appellants'] band with the Grammy award winning Commodores and the venue's Executive Director thinking he hired the Grammy award winning Commodores when he in fact hired [Appellants'] band." D. Ct. Order, Doc. 56 at 9. That the district court relied on this same evidence of a likelihood of confusion to support a finding of a likelihood of irreparable harm does not violate *eBay*. Accordingly, the district court did not err in finding, at this point of the litigation, a likelihood of irreparable harm.

### III.    Extraterritorial Scope of the Injunction

Finally, Appellants contend the district court lacked jurisdiction to issue a preliminary injunction enjoining use of the marks extraterritorially. We review a district court's decision regarding subject matter jurisdiction *de novo*. *Levi Strauss*, 51 F.3d at 984.

"The Lanham Act . . . confers broad jurisdictional powers upon the courts of the United States." *Steele v. Bulova Watch Co.*, 344 U.S. 280, 283, 73 S. Ct. 252, 254 (1952). Consistent with this broad power, federal courts generally can enforce

14

the Lanham Act against individuals who violate its strictures extraterritorially so long as "the rights of other nations or their nationals are not infringed." *Id.* at 286; *accord Levi Strauss*, 51 F.3d at 984-85. Three factors are generally considered in determining whether the Lanham Act can reach infringing activity that takes place abroad: (1) whether the defendant's conduct outside of the United States had potential adverse effect on commerce in the United States; (2) the U.S. citizenship of the defendant; and (3) whether issuing an injunction would infringe on the sovereignty of the nation within which the alleged infringing conduct occurred. *See Bulova*, 344 U.S. at 285-87, 289, 73 S. Ct. at 255-57; *Int'l Café, S.A.L. v. Hard Rock Café Int'l (U.S.A.), Inc.*, 252 F.3d 1274, 1278 (11th Cir. 2001); *see also Am. Rice, Inc. v. Ark. Rice Growers Coop. Ass'n*, 701 F.2d 408, 414-16 (5th Cir. 1983) (finding jurisdiction for an injunction outside the United States, where both parties were United States citizens, the defendant failed to establish that it had superior rights in the foreign country, where the sales of the product took place, and the effect on United States commerce was "more than . . . insignificant").

In the present case, the district court appropriately considered, *inter alia*, the factors outlined in *Bulova* and found that both parties are citizens of the United States; McClary's booking agent operates from the United States; the customer confusion was not limited to the United Kingdom and Switzerland (where McClary booked performance dates) but was also present in the United States; the marks are

15

not registered in a foreign country; and use of the marks extraterritorially will have an effect on CEC, a United States corporation. D. Ct. Order, Doc. 141 at 3.

Appellants maintain that the district court erred in its analysis of the third *Bulova* factor with respect to international comity.[7] They argue that the injunction poses a potential threat to the sovereignty of another nation. Appellants assert that because they have applied for a Community Trade Mark ("CTM") with the Office of Harmonization in the Internal Market ("OHIM"), the European Union's equivalent of the USPTO, the district court lacks jurisdiction to issue an extraterritorial injunction. We disagree and conclude the districts court's injunction in no way imposes on the sovereignty of the EU or any foreign nation.

Appellants presented no evidence that a CTM has been issued by the OHIM, nor did they present any law under which submitting an application to a CTM would affect a United States court's ability to protect the interests of its citizens here and abroad. *See Am. Rice*, 701 F.2d at 415-16 (affirming a district court's extraterritorial injunction, where the defendant showed a registration of a mark had been sought in a foreign nation, but no legal right to use that mark had been granted by that nation). Thus, we find no error with the district court's conclusion that Appellants may be enjoined extraterritorially from using CEC's marks.

---

[7] We recognized in *Levi Strauss* that the *Bulova* factors involve a comity analysis. 51 F.3d at 985, n.1.

16

## CONCLUSION

For the foregoing reasons, the district court's issuance of a preliminary injunction, enjoining Appellants from using CEC's marks and performing under the name "The Commodores featuring Thomas McClary" or "The 2014 Commodores," is **AFFIRMED**.