[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10188

Non-Argument Calendar

_____

COMMODORES ENTERTAINMENT CORPORATION,

Plaintiff-Counter
Defendant-Third Party
Defendant-Appellee,

versus

THOMAS MCCLARY,
FIFTH AVENUE ENTERTAINMENT, LLC,

Defendants-Counter
Claimants-Third Party
Plaintiffs-Appellants,

2                  Opinion of the Court                  22-10188

DAVID FISH,
an individual,
WILLIAM KING,
an individual,
WALTER ORANGE,
an individual
DOES 1 - 100,

Third Party Defendants.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:14-cv-01335-RBD-GJK

————————————

Before WILSON, LUCK, and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

This is the fourth appeal in a protracted battle about the ownership of the name of a famous band brought by Commodores Entertainment Corporation ("CEC") against Thomas McClary and his company, Fifth Avenue Entertainment, LLC ("McClary"). This time around, McClary appeals two district court orders: one awarding CEC substantial attorney's fees, and another denying McClary's motion to modify the scope of a permanent injunction.

After careful review, and in light of the Supreme Court's recent opinion in *Abitron Austria GmbH v. Hetronic International, Inc.*, 143 S. Ct. 2522 (2023), we vacate and remand both orders.

## I.

We have discussed the facts surrounding this case at length elsewhere. *See Commodores Ent. Corp. v. McClary*, 648 F. App'x 771 (11th Cir. 2016) ("*Commodores I*"); *Commodores Ent. Corp. v. McClary*, 879 F.3d 1114 (11th Cir.) ("*Commodores II*"), *cert. denied*, 139 S. Ct. 225 (2018); *Commodores Ent. Corp. v. McClary*, 822 F. App'x 904 (11th Cir. 2020) ("*Commodores III*"). Briefly, the parties have long fought over the ownership of the mark "The Commodores," the name of a famous funk and soul band that rose to prominence in the 1970s and 1980s. McClary, an original member of the band, left in 1984 and later performed in a group that he called "The 2014 Commodores" or "The Commodores featuring Thomas McClary." In 2014, CEC -- a corporation run by two of the original Commodores who remained active in the group -- sued McClary, raising a slew of trademark, false advertising, and unfair competition claims arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and state law. McClary responded with several counterclaims and third-party claims of his own.

Early on, the district court granted a motion by CEC for a preliminary injunction, barring McClary's use of the mark. Then, when CEC filed a motion for clarification revealing that McClary was marketing a tour in Europe, the court held that the preliminary injunction order applied extraterritorially because use of the mark

overseas would have a negative impact on CEC, a U.S. corporation, and would continue to cause customer confusion in this country. Based on the prevailing law at the time, we affirmed the entry of preliminary injunctive relief, including its extraterritorial application. *Commodores I*, 648 F. App'x at 778.

Moving forward, the district court bifurcated the trial into Phase I, addressing the trademark ownership rights, and Phase II, addressing infringement, liability, and damages. Phase I ended with the entry of an order granting CEC's motion for judgment as a matter of law -- before the jury was called upon to answer the question -- and converting the preliminary injunction into a permanent injunction. We affirmed. *Commodores II*, 879 F.3d at 1142.

In Phase II, the district court granted partial summary judgment in favor of CEC on its trademark infringement claim and summary judgment in favor of CEC on all of McClary's counterclaims and third-party claims. Then, at a 2019 trial, a jury found that McClary had actual notice of CEC's trademark registrations as of June 2009 and that CEC was entitled to damages equal to McClary's profits from seven musical performances in Europe. The district court also denied a motion by McClary to modify the permanent injunction so that it would no longer include Mexico, New Zealand, and Switzerland because McClary had obtained exclusive licenses for the mark in those countries. Again, a panel of this Court affirmed. *Commodores III*, 822 F. App'x at 915.

After all that, CEC moved for attorney's fees and costs under § 1117(a) of the Lanham Act. The district court referred the matter

to a magistrate judge, who determined in a Report and Recommendation ("R&R") that CEC was entitled to fees and costs because the case was "exceptional" under § 1117(a). The magistrate judge instructed CEC to submit updated information about its fees and costs and then issued a second R&R, calculating attorney's fees to be $602,618.67 and costs to be $4,560.56. Over the objections of McClary, the district court adopted both R&Rs in full.

While the supplemental order on attorney's fees was pending, McClary moved to modify the scope of the permanent injunction under Federal Rules of Civil Procedure 60(b)(5) and (b)(6). McClary argued that he had received a trademark registration of "The Commodores" from the European Union, so the district court should modify the injunction to allow him to use the mark throughout the European Union. The district court denied this motion too because: (1) the application, which was filed more than five years after the entry of the permanent injunction, was untimely under Rule 60(c)(1); and (2) even if the motion were timely, it failed on the merits. Applying this Circuit's precedent interpreting *Steele v. Bulova Watch Co.*, 344 U.S. 280 (1952), the trial court concluded that McClary and his LLC were U.S. citizens, that their activity had a substantial effect in the United States, and that the worldwide injunction did not infringe on the sovereignty of the European Union, so it upheld the worldwide scope of the injunction.

## II.

At this stage of the case's prolonged history, McClary is appealing the district court's order awarding CEC attorney's fees and

its order denying his request for a modification of the scope of the permanent injunction. However, before we could reach the merits of the appeal, the Supreme Court decided *Abitron*, which altered the law in some measure surrounding "the foreign reach of 15 U.S.C. § 1114(1)(a) and § 1125(a)(1)," two provisions of the Lanham Act. 143 S. Ct. at 2527. In that case, a manufacturer of radio remote controls, Hetronic, sued a foreign distributor, Abitron, under § 1114(1)(a) and § 1125(a)(1) for "Abitron's infringing acts worldwide." *Id.* A jury awarded Hetronic damages, and the district court "entered a permanent injunction preventing Abitron from using the marks anywhere in the world." *Id.* After the Tenth Circuit largely affirmed the judgment, the Supreme Court granted certiorari and reversed, holding that § 1114(1)(a) and § 1125(a)(1) "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic." *Id.*

Notably, the same Lanham Act provisions at issue in *Abitron* are implicated in the case before us. Thus, following *Abitron*, we asked the parties to brief its impact here. CEC responded that *Abitron* did not affect the district court's orders since the focus of the permanent injunction was primarily domestic and the attorney's fees determination was based on McClary's long history of a variety of unreasonable litigation tactics. McClary, for his part, claimed that both orders must be vacated because the injunction is aimed mostly at his foreign conduct, and because CEC is no longer entitled to attorney's fees now that *Abitron* has vindicated his litigation position all along. So, as we see it, the parties' current

dispute raises several new factual questions. And importantly, they disagree on whether the injunction is targeting domestic and/or foreign conduct, and on how this discrepancy might fare under *Abitron*, which restricted the Lanham Act's reach over foreign conduct. Because the resolution of the issues in front of us may require further factfinding, we are not inclined to tackle them in the first instance. *Pullman–Standard v. Swint*, 456 U.S. 273, 291–92 (1982) ("[F]actfinding is the basic responsibility of district courts, rather than appellate courts." (alteration in original) (quotations omitted)); *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000) ("We therefore abide by the general rule of law that a remand is the proper course unless the record permits only one resolution of the factual issue." (quotations omitted)). Instead, we believe the wiser course is to give the district court the first opportunity to reconsider both the extraterritorial application of the injunction and its attorney's fees determination, taking into account the Supreme Court's new case law.

Accordingly, we vacate and remand so that the district court can revisit its latest two orders in light of the Supreme Court's decision in *Abitron*.

**VACATED AND REMANDED.**